CARMEN VELLÓN MALDONADO y OTROS, demandantes y peticionarios, *v.* SQUIBB MANUFACTURING, INC., demandada y recurrida.

*Número:* CE-86-77 *Resuelto:* 2 de diciembre de 1986

840

842

*Miguel A. Velázquez Rivera,* abogado de los peticionarios; *Leila Alvarado González, Salvador Antonetti* y *Mario Arroyo Dávila,* de *Fiddler, González & Rodríguez,* abogados de la codemandada-recurrida Technicon Electronics Corp.; *José A. Cepeda Rodríguez* y *Luis Sánchez Betances,* de *Cepeda, Sánchez Betances & Sifre,* abogados de la recurrida Squibb Manufacturing, Inc.; *María Emilia Picó,* de *Rexach & Picó,* abogada del demandado-recurrido y tercero demandado-recurrido Reedco, Inc.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

I

El 27 de febrero de 1985, trece (13) residentes de la Urbanización Ciudad Cristiana de Humacao demandaron a

Squibb Manufacturing Enterprises, Inc. y a Technicon Electronics Corp. Se alegó que las demandadas estaban lanzando desperdicios tóxicos, entre los que se incluyen metales pesados tales como mercurio, en la Quebrada Frontera que discurre a través de la Urbanización donde residían los demandantes. Se expresó que la conducta de los demandados violaba disposiciones estatutarias federales y estatales. Como resultado de la alegada conducta, los demandantes reclaman que por haber estado expuestos a metales pesados y desperdicios tóxicos, han sufrido lesiones físicas en distintos órganos y padecen intensos sufrimientos físicos y angustias mentales. El 26 de agosto de 1985 se presentó una demanda enmendada donde se incluyeron alrededor de trescientos (300) residentes de la referida urbanización y se añadieron como demandados a: Reedco, Inc. y Squibb Manufacturing, Inc. (¹); Trade Enterprises, Inc.; Ersana, Inc. y Resana, Inc., (²) y al Estado Libre Asociado de Puerto Rico. (³) En esta alegación enmendada los demandantes también reclamaron daños por haber tenido que desalojar sus viviendas —acción ésta ordenada por el Estado— lo que causó la desarticulación total de sus vidas en comunidad. En total se reclamaron aproximadamente ciento cincuenta y nueve millones seiscientos treinta mil dólares ($159,630,000). (⁴)

El 28 de agosto de 1985 los demandantes presentaron una moción en "Solicitud de Orden Extraordinaria para Regular

---

(¹) Sucesora en derechos y obligaciones de Squibb Pharmaceutical Complex (Manufacturing Enterprises, Inc.).

(²) Se alega que estas dos corporaciones también lanzan desperdicios tóxicos en la Quebrada Frontera.

(³) Se alega que el Estado, a través de sus funcionarios autorizó y aprobó la construcción y ocupación de las viviendas en los lugares alegadamente contaminados.

(⁴) Technicon Electronics Corp., Inc., trajo como terceros demandados a: USI Properties Corporation (P.R. Division), y M. D. Construction Company, Inc., propietarios y desarrolladores de la Urbanización Ciudad Cristiana.

el Trámite en Litigios Complejos (CMO)". En ésta expresaron que:

3. La magnitud de las reclamaciones, el número de demandantes y las cuestiones planteadas colocan este caso en la categoría de lo que se ha estado denominando un litigio complejo (complex litigation case) que amerita un trámite extraordinario para evitar que se frustren los fines de la justicia y se multipliquen las cargas del Honorable Tribunal.

. . . . . . .

5. En casos de contaminación masiva, como el [d]e epígrafe, cada interrogatorio y cada vehículo inquisitorial de los reconocidos por las Reglas tiene que ser contestado individualmente por cada una de las partes en el proceso duplicando, más bien multiplicando, contestaciones y comparecencias idénticas, repetitivas, ad nauseam y ad infinitum, con la consiguiente atrición de las propias partes y del Tribunal.

6. En otras jurisdicciones se ha desarrollado un método exitoso para impedir el estancamiento y la anarquía procesal mediante la adopción de Ordenes Extraordinarias para el Manejo del Caso (CMO).

El tribunal de instancia citó a las partes para una conferencia sobre el estado procesal del caso (status conference), les requirió que llevaran propuestas sobre el contenido de la orden extraordinaria para el manejo del caso y ordenó la paralización del descubrimiento de prueba hasta nueva orden del tribunal. En esa conferencia preliminar los demandantes solicitaron, conforme la Regla 38.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que el caso se tramitara en dos etapas. En la primera fase se adjudicaría la negligencia o responsabilidad de los demandados y terceros demandados, y en la segunda, de existir responsabilidad por parte de todos o algunos de éstos, se adjudicarían los daños de los reclamantes. Los demandantes argumentaron que no se debían utilizar los métodos tradicionales de descubrimiento de prueba, y solicitaron que los abogados de las partes celebraran reuniones bisemanales en las que se intercambiarían información limitada a la

primera fase del litigio. Amparándose en decisiones relacionadas con la liberalidad y amplitud del proceso de descubrimiento de prueba, (⁵) el ilustrado foro de instancia no concedió la solicitud de dividir el procedimiento en dos etapas. En laudable esfuerzo para facilitar y simplificar los procedimientos, el tribunal de instancia emitió una orden en la cual reglamentó el proceso de descubrimiento de prueba. (⁶) A

---

(⁵) Se citó: *Meléndez* v. *Levitt & Sons of P.R.*, 104 D.P.R. 895 (1976); *García Negrón* v. *Tribunal Superior*, 104 D.P.R. 727 (1976); *Sierra* v. *Tribunal Superior*, 81 D.P.R. 554 (1959); *Shell Co. (P.R.) Ltd.* v. *Tribl. de Distrito*, 73 D.P.R. 451 (1952). También citó a *Miller* v. *American Bonding Co.*, 257 U.S. 304 (1921), sobre la doctrina de bifurcación del juicio.

(⁶) Esta orden puede resumirse de la siguiente forma:

A) Descubrimiento de prueba documental en poder de las partes. Las partes acordarían reunirse para intercambiarse todos los documentos en su poder relacionados con la contaminación alegada, las lesiones físicas o emocionales de los demandantes. Luego de examinar esos documentos, se le concede un término a los demandados para requerirle a los demandantes los exámenes médicos que estimaran procedentes. Luego de los exámenes, se le notificaría a los demandantes copia de los resultados de las evaluaciones médicas. También se concedió un término adicional para analizar la prueba documental intercambiada y determinar la información adicional necesaria, a ser requerida mediante interrogatorio.

B) Prueba documental en poder de terceras personas. Se le ordenó a las partes consentir al requerimiento de prueba documental en poder de terceras personas o agencias gubernamentales. Cuando fuera necesario citar a deposiciones a estas terceras personas, las partes acordarían la fecha y lugar de estas deposiciones.

C) Descubrimiento de prueba adicional.

i) *Interrogatorios*. Para recopilar información adicional que no surja del intercambio de documentos las partes usarían los interrogatorios. Los pliegos de interrogatorios se someterían al tribunal para su aprobación, las partes tendrían diez (10) días para objetarlos, y sesenta (60) días para contestarlos. Los demandados se dividirían en grupos de por lo menos cincuenta (50) personas, y contestarían, de forma individual, en treinta (30) días el primer grupo y luego de ese primer término, veinte (20) días, los grupos subsiguientes. También dispuso que los interrogatorios no podrían ser repetitivos, onerosos u opresivos.

ii) *Deposiciones*. Terminado todo el procedimiento anterior —intercambio de documentos, exámenes médicos e interrogatorios— las partes que interesaran tomar deposiciones le notificarían al tribunal el nombre de las personas a deponer y la justificación para ello. El tribunal autorizaría la toma de estas deposiciones y resolvería las objeciones que se pudieran

pesar de la falta de guías adecuadas en nuestro ordenamiento en cuanto a la reglamentación del descubrimiento de prueba en los casos complejos, la orden del tribunal proveyó para el intercambio de documentos en poder de las partes y terceras personas, un calendario para la contestación de interrogatorios, la toma de deposiciones previamente autorizada por el tribunal y otras disposiciones generales.

De esta orden ([7]) recurren los demandantes y alegan como error la negativa del foro de instancia a dividir el procedimiento en dos etapas; también alegan que erró el tribunal al no emitir una orden extraordinaria para el manejo de casos complejos. Los demandados Technicon Electronics Corp., Squibb Manufacturing, Inc., y Reedco, Inc., han comparecido para openerse al recurso presentado. Por estar en condiciones de resolver, así procedemos a hacerlo sin ulterior trámite.

---

presentar a la toma de las mismas. Luego de autorizadas, las partes acordarían el lugar, fecha, hora y orden en que se tomarían las deposiciones.

iii) *Disposiciones generales.* a) Las objeciones o reparo con respecto a contestaciones de interrogatorios, toma de deposiciones u otros mecanismos de descubrimiento deberían resolverse, en lo posible, entre las partes. Si no se llegara a un acuerdo, la parte objetante elevaría al tribunal la controversia para ser resuelta por éste; b) cuando por causa justificada no se pudiera celebrar una reunión, toma de deposición, etc., la parte que no pueda asistir debería notificar a las demás partes mediante el uso del medio de comunicación más rápido y apropiado; c) las partes no presentarían al tribunal la información que se recopile en el proceso de descubrimiento de prueba, salvo cuando sea necesario para cumplir otras disposiciones de la orden del tribunal; d) el tribunal se reservó el derecho de modificar su orden de existir justa causa, a pedido de alguna de las partes o motu proprio; y finalmente, e) se le ordenó a la Secretaría del tribunal notificar esa orden a las partes que se unan al caso. Estas tendrían treinta (30) días para notificarle al tribunal su posición sobre la misma.

([7]) Previo a que se dictara esta orden, Technicon Electronics Corp. había notificado a los demandantes un extenso interrogatorio de cincuenta y una (51) preguntas con múltiples subdivisiones, y una solicitud de documentos para complementar el interrogatorio enviado. La Squibb Manufacturing, Inc. a su vez había notificado a los demandantes su primer pliego de interrogatorios con ochenta y seis (86) preguntas y múltiples subdivisiones. Entre los dos interrogatorios, cada uno de los demandantes debería contestar seiscientas ochenta y tres (683) preguntas, muchas de las cuales son repetitivas.

## II

*El descubrimiento de prueba en los casos complejos y el uso de las conferencias preliminares al juicio, Regla 37.1*

Los llamados casos complejos constituyen un reto a nuestro sistema judicial, y en particular al ordenamiento procesal moderno. Estos casos se caracterizan por tener múltiples partes y controversias de hechos o de derechos complejas y técnicas. Su manejo requiere remedios extraordinarios y órdenes particulares que reglamenten la conducta procesal de las partes y atiendan adecuadamente las reclamaciones de millonarias sumas de dinero que suelen caracterizar estos litigios. A la par que nuestra sociedad crece y se desarrolla, este tipo de caso aumenta. Los problemas que surgen de la explosión urbana, industrial, científica y tecnológica desafían los esquemas adjudicativos vigentes. Es ineludible el deber de los tribunales de acoplarse a esta nueva realidad. La forma tradicional de resolución de disputas resulta inadecuada para la litigación compleja. A este reto los tribunales tienen que enfrentarse de forma decidida e imaginativa, adaptando los mecanismos procesales existentes y haciendo uso activo de todos los recursos que tienen a su disposición. Hay que estructurar los mecanismos procesales necesarios para adjudicar pronta y adecuadamente este nuevo tipo de controversias. *Cf.* D. B. Gold, *Pretrial Management of the Big Case: A Plaintiff's Perspective*, 3 Litigation 8, 51 (Núm. 3—1977); J. D. Weinstein, *Some Reflections on the "Abusiveness" of Class Actions*, 58 F.R.D. 299, 305 (1973); [8] G. B. Hazard,

---

[8] El Juez Jack B. Weinstein al expresarse sobre la utilidad de las acciones de clase indica que:

"It seems to me that this matter touches on the credibility of our judicial system. Either we are committed to make reasonable efforts to provide a forum for the adjudication of disputes involving all our citizens— including those deprived of human rights, consumers who overpay for products because of antitrust violations, and investors who are victimized by misleading information—or we are not . . . ."

*The Effect of the Class Action Device Upon the Substantive Law*, 58 F.R.D. 307, 308–309 (1973).

La controversia que nos plantea este caso hace necesario que nos enfrentemos con varios problemas que a menudo agobian nuestro sistema adjudicativo; como son, evitar el posible abuso en el descubrimiento de prueba[9] sin perjudicar el uso adecuado de estos mecanismos y reducir el atraso en los calendarios judiciales sin limitar innecesariamente el acceso

---

"When the organization of a modern society, such as ours, affords the possibility of illegal behavior, accompanied by widespread diffuse consequences, some procedural means should exist to remedy or at least deter that conduct.

• • • • • • • •

"The solution, it seems to me, will have to come from a case by case interpretation of subtle doctrines and standards, and not by a rigid narrowing of the Rule, preventing those who need it from obtaining appropriate redress.

"Control of the relatively small problems of abuse involving solicitations and the like can be handled by guidelines without any difficulty. The Manual for Complex and Multi-District Litigation has set them forth adequately." J. D. Weinstein, *Some Reflections on the "Abusiveness" of Class Actions*, 58 F.R.D. 299, 305 (1973).

Debido a que muchos casos complejos se dilucidan a través del mecanismo de acción de clase, lo expresado por el Juez Weinstein es de gran pertinencia a las controversias en este caso.

Para un debate a fondo sobre la legitimidad y la función judicial en este tipo de litigación compleja y de grupo, véanse O. M. Fiss y D. Rendleman, *Injunctions*, 2da ed., Nueva York, The Foundation Press, 1984, págs. 805–830; O. M. Fiss, *The New Procedure*, 54 Rev. Jur. U.P.R. 209 (1985); J. Resnik, *Managerial Judges*, 96 Harv. L. Rev. 376 (1982).

[9] Aunque la queja sobre el abuso del descubrimiento de prueba es reclamada por muchos, los estudios realizados demuestran que ese abuso no existe en forma generalizada. S. T. Levy, *Discovery—Use, and Abuse, Myth and Reality*, 17 The Forum 465, 466–468 (1981); J. B. Levine, *"Abuse" of Discovery: or Hard Work Makes Good Law*, 67 A.B.A.J. 565, 566 (1981).

En Puerto Rico hay estudios sobre el atraso en los calendarios judiciales, pero no existe estudio preciso sobre el abuso en el descubrimiento de prueba. En general véanse *Informe del Comité sobre Normas y Objetivos para Acelerar el Trámite de Casos en el Tribunal de Primera Instancia*, Tribunal Supremo de Puerto Rico, diciembre de 1984, pág. 22 y ss.; M. S. Rodríguez González, *La labor de los tribunales: mitos y realidad*, 1 Forum 24 (enero-marzo 1985).

a los tribunales. ([10]) Estos problemas a veces surgen o se agravan por la falta de cooperación de los abogados o por el escaso control que ejercen sobre los casos algunos jueces en las etapas previas al juicio o por una combinación de ambos factores. Véase *Lluch* v. *España Service Sta.*, 117 D.P.R. 729 (1986).

■ En casos complejos como el de autos los jueces tienen que mantenerse alertas al potencial que existe para el abuso, ya sea por el uso inadecuado o excesivo de los mecanismos de descubrimiento. Tienen que estar dispuestos a intervenir mediante la emisión de guías y órdenes apropiadas para conjurar los problemas en sus inicios. S. T. Levy, *Discovery—Use, and Abuse, Myth and Reality,* 17 The Forum 465 (1981); J. B. Levine, *"Abuse" of Discovery: or Hard Work Makes Good Law,* 67 A.B.A.J. 565 (1981); M. I. Kaminsky, *Proposed Federal Discovery Rules for Complex Civil Litigation,* 48 Fordham L. Rev. 907, 913–914 (1980); A. L. Levin y D. D. Colliers, *Containing the Cost of Litigation,* 37 Rutgers L. Rev. 219, 234–235 (1985).([11])

■ Resulta, pues, indispensable que en este tipo de caso el tribunal, desde su comienzo, identifique los problemas po-

---

([10]) El incremento en la presentación de casos y la complejidad de algunos de ellos, sin que se haya provisto el aumento correlativo de personal y facilidades son algunas de las causas principales del congestionamiento y atraso de casos en los tribunales. Véanse los estudios realizados en Puerto Rico sobre este tema. Escolio 9, *ante.*

([11]) Levy entiende que el abuso en el descubrimiento de prueba se debe: 1) al tamaño, complejidad e importancia de los problemas que están ligados al caso complejo; 2) al uso de abogados especializados en descubrimiento de prueba (*discovery lawyer*), que no tiene en perspectiva todas las necesidades del abogado litigante (*trial lawyer*) al preparar su caso; 3) la práctica generalizada de los bufetes comerciales que cobran por sus servicios a base de horas trabajadas. Argumenta que esa práctica no fomenta el uso expedito y eficiente del descubrimiento. (Sobre las altas ganancias de este tipo de bufetes en Estados Unidos, véase A. L. Levin y D. D. Colliers, *Containing the Cost of Litigation,* 37(2) Rutgers L. Rev. 219, 225, 231 (1985), y 4) la falta de empeño de los jueces en supervisar esta etapa y la actitud renuente de éstos a imponer sanciones. Levy, *op. cit.,* págs. 469–473.

tenciales y tome control del caso. *Manual for Complex Litigation, Second* Secs. 20, 20.1 y 20.11, págs. 5–7 (1986) ; ([12]) 6 *Wright & Miller, Federal Practice and Procedure: Civil* Sec. 1530, pág. 624 y ss. (1971) ; F. James y G. C. Hazard, *Civil Procedure*, 3ra ed., Boston, Little, Brown and Co., 1985, págs. 264–265; *The Improvement of the Administration of Justice*, 6ta ed., Chicago, ABA Press, 1981, págs. 142–148; *Nuevos enfoques en la administración judicial*, Secretariado de la Conferencia Judicial, Tribunal Supremo de Puerto Rico, octubre de 1982, págs. 18, 38, 42; *Informe del Comité sobre Normas y Objetivos para Acelerar el Trámite de Casos en el Tribunal de Primera Instancia*, Tribunal Supremo de Puerto Rico, diciembre de 1984, pág. 62 y ss.; Levy, *op. cit.*, pág. 473; Levine, *op. cit.*, pág. 567; R. F. Peckham, *A Judicial Response to the Cost of Litigation: Case Management, Two-Stage Discovery Planning and Alternative Dispute Resolution*, 37 Rutgers L. Rev. 253, 254 y ss., esc. 18 (1985) ; además, véase *S. J. Credit, Inc.* v. *Ramírez*, 113 D.P.R. 181, 187–188 (1982).

■ La filosofía que inicialmente permeaba y orientaba el descubrimiento de prueba —dejar los trámites en esta etapa en manos de los abogados— ha variado sustancialmente. Ahora, inclusive en algunos casos que no caen en la categoría de complejos, se considera deseable el control judicial desde bien temprano en el proceso. *Lluch* v. *España Service Sta.*, supra, pág. 743 n. 11 y 12 y texto que los acompaña; Hon. G. Arbona Lago, *El "status" sí está en "issue"*, 1 Forum 28 (oct.–dic. 1985) ; *Nuevos enfoques en la administración judicial, op. cit.; Informe del Comité sobre Normas y Objetivos*,

---

([12]) Este manual, auspiciado por el Federal Judicial Center y redactado por jueces de distrito y de apelación, advierte que: "Fair and efficient resolution of complex litigation depends upon effective control and supervision by the court, dedication and professionalism of counsel, and the collaboration of the judge and the attorneys in developing, implementing, and monitoring a positive plan for the conduct of pretrial and trial proceedings." *Manual for Complex Litigation, Second* Sec. 20, pág. 5 (1986).

*op. cit.; Editorial Opinion & Comment*, 66 A.B.A.J. 686 (1980); P. R. Connolly, *Why We Do Need Managerial Judges*, 23 Judge's J. 34 (Núm. 4—1984); E. C. Friesen, *Cures for Court Congestion*, 23 Judge's J. 4 (Núm. 1—1984); *The Improvement of the Administration of Justice, op. cit.;* Regla 16 de Procedimiento Civil federal, según enmendada en 1983 y el comentario del Comité Asesor. [13] El control judicial requerido en estos casos se viabiliza a través del uso imaginativo y creador de la Regla 37.1, sobre conferencia preliminar al juicio [14] y la Regla 23.2, sobre órdenes protec-

---

[13] En contra: J. Resnik, *Managerial Judges and Court Delay: The Unproven Assumptions*, 23 Judge's J. 8 (Núm. 1—1984); J. Resnik, *The Assumptions Remain*, 23 Judge's J. 37 (Núm. 4—1984). Para una respuesta a estos artículos véase R. F. Peckham, *A Judicial Response to the Cost of Litigation: Case Management, Two-Stage Discovery Planning and Alternative Dispute Resolution*, 37 Rutgers L. Rev. 253, 260 y ss., n. 34 (1985).

Nuestra Regla 37.1 de Procedimiento Civil proviene de la Regla 16 federal. El comentario del Comité Asesor de las Reglas de Procedimiento Civil federal al reseñar la enmienda de 1983 a la Regla 16 expresó: "Empirical studies reveal that when a trial judge intervenes personally *at an early stage* to assume judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps, the case is disposed of by settlement or trial more efficiently and with less cost and delay than when the parties are left to their own devices." (Énfasis suplido.)

[14] La Regla 37.1 dispone:

"En cualquier pleito el tribunal podrá, en el ejercicio de su discreción, ordenar a los abogados de las partes que comparezcan a una conferencia para considerar:

"(a) La simplificación de las cuestiones litigiosas;

"(b) La necesidad o conveniencia de enmendar las alegaciones;

"(c) La posibilidad de obtener admisiones de hechos y de documentos en evitación de prueba innecesaria;

"(d) La revelación de la identidad de los testigos que se espera utilizar en el juicio y la limitación del número de testigos peritos;

"(e) La conveniencia de someter preliminarmente cuestiones litigiosas a un comisionado para sus determinaciones de hecho;

"(f) *Cualesquiera otras medidas que puedan facilitar la más pronta terminación del pleito.*

"El tribunal dictará una orden en que expondrá lo acordado en la conferencia, las enmiendas que se hubieren permitido a las alegaciones y las estipulaciones de las partes en relación con cualesquiera de los asuntos considerados y que limiten las cuestiones litigiosas a ser consideradas en el jui-

toras. ($^{15}$) El juez tiene discreción para celebrar una o más de estas conferencias. En el ejercicio de esta discreción los tribunales tomarán en consideración factores tales como la complejidad de las controversias planteadas, la multiplicidad de partes, las cuantías reclamadas, las actitudes de las partes y sus abogados y la urgencia del remedio solicitado.

■ En casos como el de autos, de controversias complejas y múltiples partes, el éxito de la conferencia preliminar y el posterior trámite fluido del caso dependen en gran medida de la participación activa e imaginativa del juez, ($^{16}$) comple-

---

cio, a aquellas no resueltas mediante admisiones o estipulaciones de los abogados; y dicha orden, una vez dictada, gobernará el curso subsiguiente del pleito, a menos que sea modificada en el juicio para impedir manifiesta injusticia.

"El secretario del tribunal hará la notificación correspondiente a las partes por lo menos treinta (30) días antes de la fecha fijada para la conferencia, excepto cuando el tribunal, por circunstancias excepcionales o mediante solicitud de parte, ordene su celebración en cualquier otro momento antes del juicio." (Énfasis suplido.)

En *S. J. Credit, Inc.* v. *Ramírez*, 113 D.P.R. 181, 188 (1982), adelantamos con relación a esta conferencia, que "su celebración es discrecional, pudiendo ser ésta ordenada a instancia del tribunal o de parte *dependiendo en mayor o menor medida de las complejidades del caso*. En términos generales es deseable su celebración cuando la controversia comprende intrincadas cuestiones de hechos, abundante prueba documental y testifical, multiplicidad de partes y reclamaciones y se han utilizado intensamente los mecanismos de descubrimiento de prueba". (Énfasis en el original.)

($^{15}$) Con relación a la Regla 26 federal, equivalente a la 23.2 nuestra, 8 *Wright & Miller, Federal Practice and Procedure: Civil* Sec. 2036, págs. 267, 269 (1970), se expresa que: "a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." Véase la Regla 23.2.

($^{16}$) El *Manual for Complex Litigation, Second, op. cit.*, pág. 10, describe la función del juez en esta etapa:

"Effective judicial management generally has the following additional characteristics:

"*it is active:* The judge attempts to anticipate problems before they arise and does not wait passively for matters to be presented by counsel. Because the attorneys may become immersed in the details of the case, innovation and creativity in formulating a plan for conduct of the litigation frequently must come from the court.

mentada por una conducta profesional y cooperadora por parte de los abogados. (¹⁷)

---

"*it is substantive:* The judge's involvement is not limited to procedural matters. Rather, the judge becomes familiar at an early stage with the substantive issues in order to play a more constructive role in issue identification and pretrial management.

"*it is timely:* The judge promptly decides disputes that may substantially affect the course or extent of further proceedings. The content of a ruling is often less important than the fact that it is made without delay.

"*it is continuing:* The judge periodically monitors the progress of the litigation to assure that schedules are being followed and to consider any needed modifications in the program. The judge may call for interim reports between scheduled conferences.

"*it is firm, but fair:* The judge expects schedules to be met and imposes appropriate sanctions for derelictions and dilatory tactics. Time limits and other controls, however, are not imposed arbitrarily or without considering the views of counsel and are subject to revision when warranted by the circumstances."

También véase *Nuevos enfoques en la administración judicial*, Secretariado de la Conferencia Judicial, Tribunal Supremo de Puerto Rico, diciembre de 1984, págs. 14–21, 48, 54–55. Las partes no deben tener temor de discutir con el juez los méritos del caso. El juez es un perito en derecho debidamente entrenado para resolver justamente las controversias y dejar a un lado sus prejuicios.

(¹⁷) El *Manual for Complex Litigation, Second, op. cit.*, págs. 13–14, advierte sobre la conducta de los abogados:

"Increased responsibilities as advocates should not be allowed to diminish the attorney's responsibilities as officers of the court. Counsel can and should be expected to work cooperatively and professionally with each other and with the court. Active, creative participation by the attorneys in planning for efficient handling of the complex case is no less a part of the duty owed to the court than is their timely execution of the details of that plan. Even if large amounts are at stake, counsel must be prepared to stipulate to matters not in genuine dispute, and, indeed, to avoid all unnecessary contentiousness. They should communicate freely with one another and resolve informally most disputes regarding discovery without the need for judicial rulings. Cooperation, courtesy, and professionalism by counsel should be expected and required in all litigation; but they are particularly important in complex cases."

El Manual nos recuerda que, conforme a la Regla 26 (g) de Procedimiento Civil federal, la firma de un abogado en un requerimiento, contestación u objeción al descubrimiento constituye una certificación de éste, conforme a su conocimiento e información, que el escrito no se interpone con ninguna intención indebida y cumple con las normas establecidas del descubrimiento de prueba. Nuestras Reglas no tienen una disposición idéntica a la Regla 26 (g) federal, pero su objetivo se cumple cabalmente por la Regla

 Cada caso es diferente y los problemas procesales que se pueden plantear son distintos. El tribunal, con la ayuda de las partes, tendrá que diseñar el procedimiento adecuado para cada caso en particular. La virtud de las Reglas 37.1 y 23.2 estriba en que permiten al tribunal ejercer gran flexibilidad en el manejo del caso. No hay, ni es conveniente que haya, un procedimiento uniforme para todos los casos complejos. El número de conferencias previas al juicio que se celebren y de órdenes protectoras que se emitan dependerá de las necesidades y circunstancias particulares de cada caso. En general, véase *Manual for Complex Litigation, Second, op. cit.*, Sec. 21.2, pág. 29 y ss.

 Es importante recalcar que posiblemente la primera conferencia ante el juez, aquella donde se estructuren los procedimientos y se paute el calendario a seguir, sea la más importante. Su efectividad dependerá en gran medida de la preparación e interés de las partes y del juez. Las partes deben ir preparadas con sugerencias para la estructuración del caso, y el juez debe tener conocimiento previo de la naturaleza del mismo y de los potenciales problemas procesales. Ese es el momento apropiado para someter al tribunal una solicitud para dividir la adjudicación de las controversias, causas de acción o reclamaciones. El alcance del descubrimiento de prueba y las etapas en que éste se lleve a cabo dependerá y variará de acuerdo con la forma en que se divida el caso. El tribunal, con la cooperación de las partes, debe pre-

---

9. Ésta dispone que en "[t]odo escrito de una parte representada por abogado . . . [l]a firma de un abogado equivale a certificar el haber leído el escrito; que de acuerdo con su mejor conocimiento, información y creencia está bien fundado; y que no ha sido interpuesto para causar demora u opresión. . . . La violación voluntaria de esta regla por parte de un abogado dará lugar a la imposición de sanciones en su contra".

La cooperación y acción planificada entre los abogados de las partes similarmente situadas ayudan al trámite fluido de este tipo de litigación. D. B. Gold, *Pretrial Management of the Big Cases: A Plaintiff's Perspective*, 3 Litigation 8, 9–10 (Núm. 3–1977).

cisar y simplificar las controversias del caso. También deberá considerar asuntos tales como, posibles estipulaciones de hechos, intercambio de documentos en poder de las partes, confección de un programa y calendario que reglamente el descubrimiento de prueba, y la presentación de posibles enmiendas a las alegaciones, demandas contra coparte, demandas contra terceros, y mociones que sea conveniente resolver al inicio de los procedimientos.[18] La orden final que surja de estas conferencias debe recoger fielmente los asuntos discutidos y la disposición que tome el tribunal en relación con los mismos.[19]

El cumplimiento de la orden que reglamente el descubrimiento debe ser supervisado periódicamente por el tribunal. *Manual for Complex Litigation, Second, op. cit.*, Sec. 21.42, pág. 43. Al confeccionar esta orden el tribunal debe tomar en consideración factores, tales como: 1) los recursos de las partes, incluyendo los recursos de los abogados que las representan; 2) el costo de los diferentes mecanismos de descubrimiento; 3) la necesidad de modificar o limitar el uso de estos mecanismos;[20] 4) el posible uso en forma colectiva de los distintos mecanismos por las partes y para las partes que estén similarmente situadas; 5) la identificación de la parte que más fácilmente pueda producir determinada información; 6) si se ha dividido en etapas la adjudicación de

---

[18] Las defensas afirmativas separables de la controversia central del caso, que puedan terminar el pleito, deben dilucidarse en esta etapa. Por ejemplo, mociones de desestimación o de sentencia sumaria por falta de jurisdicción, falta de parte indispensable o prescripción. Véase también, *Manual for Complex Litigation, Second, op. cit.*, Sec. 21.2, págs. 29–33.

[19] Aunque las órdenes que emita el tribunal en esta etapa dependen de su sana discreción y, por consiguiente, de ordinario no intervendremos con ellas, *Lluch* v. *España Service Sta.*, 117 D.P.R. 729 (1986), un récord claro de los procedimientos en estas conferencias le garantiza a las partes la eficacia de la revisión judicial.

[20] Sobre la importancia y el uso eficiente del mecanismo de requerimiento de documentos, véase Gold, *op. cit.*, pág. 11.

controversias, la limitación correlativa del descubrimiento; y 7) la necesidad de fijar términos razonables para usar y cumplir con estos mecanismos.

■ El tribunal debe fomentar, hasta donde sea posible, que las partes estipulen, conforme a la Regla 26 de Procedimiento Civil, [21] la forma en que se llevará a cabo el descubrimiento. Debe también examinar, entre otros mecanismos, la deseabilidad de nombrar peritos del tribunal y designar un comisionado, *Meléndez* v. *Levitt & Sons of P.R.*, 104 D.P.R. 895 (1976), [22] de fomentar el uso del mecanismo de requeri-

---

[21] Esta regla dispone:

"A menos que el tribunal ordene lo contrario, las partes podrán estipular que (1) las deposiciones sean tomadas ante cualquier persona, en cualquier fecha, o lugar, notificando por cualquier medio y llevándose a cabo de cualquiera forma, y cuando así fuere, podrán ser utilizadas de la misma manera que las otras deposiciones, o (2) que el procedimiento dispuesto por estas reglas para cualquier otro método de descubrimiento, pueda ser modificado." También véase, *Lluch v. España Service Sta.*, supra, pág. 743 n. 11 y texto que le acompaña.

Por ejemplo, las partes podrían pactar el uso de los interrogatorios escritos a los testigos, en sustitución de deposiciones orales o escritas.

Con relación a la estipulación de hechos y los requerimientos de admisión, el *Manual for Complex Litigation, Second, op. cit.*, pág. 81, expresa: "The degree to which stipulations can be obtained may depend not so much on the procedures used as on the attitude of the parties. Attorneys are sometimes reluctant to make concessions that will in any way ease their opponents' burden. The judge can play an important role in helping counsel to recognize that, in addition to fulfilling *their responsibilities as officers of the court, they will usually best serve their clients' interests by making appropriate concessions and admissions.*" (Énfasis nuestro.)

[22] Este era un caso complejo que involucraba alrededor de trescientos (300) demandantes. En esa ocasión al explicar las facultades de un comisionado expresamos: "Resolver sobre objeciones a interrogatorios y supervisar procedimientos sobre descubrimiento de prueba están implícitas en dicha regla [41.3] . . . [n]o obstante, tal delegación debe aparecer claramente especificada. Más aún, el comisionado no podrá excederse en el uso de las facultades que le hayan sido conferidas aun si contara para ello con el consentimiento de las partes. El comisionado debe tener presente que él está para ayudar al tribunal; él no es el tribunal." *Meléndez* v. *Levitt & Sons of P.R.*, supra, págs. 903–904.

El *Manual for Complex Litigation, Second, op. cit.*, Sec. 20.14, págs. 11 y 12, y Sec. 21.5, págs. 97–103, no fomenta el uso generalizado en este tipo

miento de admisiones, de enviar interrogatorios a los testigos en sustitución de deposiciones y de realizar deposiciones en conjunto o por teléfono. En general véase *Manual for Complex Litigation, Second, op. cit.*, Sec. 21.47, págs. 77–82 y Sec. 21.422, págs. 48 y ss. (²³)

## III

*El uso de las Reglas 38.2 y 37.1*

Nuestra Regla 38.2 de Procedimiento Civil de 1979 sobre juicios por separado proviene de la Regla 42(b) de Procedimiento Civil federal. (²⁴) La Regla 38.2 dispone:

> El tribunal por razón de conveniencia, o para evitar perjuicio, o para evitar gastos innecesarios, o para facilitar la más pronta terminación del litigio, podrá ordenar un juicio

---

de caso de los comisionados y los magistrados federales, porque éstos causan dilación y costos adicionales, además de diluir el control y supervisión del juez en las distintas etapas. Sin embargo, cuando el juez designe un comisionado, según lo expresado en *Meléndez v. Levitt & Sons of P.R.*, supra, éste debe trabajar en continua colaboración y supervisión del juez. En estos casos el juez nunca debe abstenerse de seguir supervisando todos los procedimientos del caso.

(²³) El *Manual for Complex Litigation, Second, op. cit.*, Sec. 21.422, págs. 47, 48–49, describe algunos mecanismos que se han usado con éxito para realizar un descubrimiento más rápido y económico. En general, también véase Gold, *op. cit.*

(²⁴) La redacción de nuestra regla difiere de la regla federal en que esta última limita su uso a que no se menoscabe el derecho a juicio por jurado. La diferencia resulta ser muy importante, pues al no existir el juicio por jurado en las acciones civiles en Puerto Rico, el tribunal tiene más libertad para autorizar la separación del procedimiento adjudicativo. Dispone la Regla 42(b):

"(b) *Separate Trials*. The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, *always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.*" (Énfasis nuestro.)

por separado de cualesquiera demandas, demandas contra coparte, reconvenciones, demandas contra tercero, o de cualesquiera cuestiones litigiosas independientes, y podrá dictar sentencia de acuerdo con lo dispuesto en la Regla 44.3.

■ En *Muñoz* v. *Tribl. de Distrito*, 72 D.P.R. 842, 846 (1951), indicamos que aun cuando "la consolidación de las controversias y la celebración de una sola vista para conocer de una vez todas las cuestiones en disputa constituyen la regla general, existen, sin embargo, excepciones. Una de esas excepciones precisamente la constituyen aquellos casos en que la resolución de determinada cuestión de derecho pone fin al caso, evitándose así la celebración de un prolongado juicio sobre todas las cuestiones en controversia".

■ "La actuación de un tribunal de primera instancia al conceder o negar un juicio por separado cae enteramente dentro de la sana discreción de éste y no será alterada, a menos que se demuestre que se abusó de tal discreción." *Muñoz* v. *Tribl. de Distrito*, supra, pág. 846. La doctrina federal sobre juicio por separado es similar. Regla 42(b) de Procedimiento Civil federal; *Arnold* v. *Eastern Air Lines, Inc.*, 681 F.2d 186, 192–194 (4to Cir. 1982); *Bowie* v. *Sorrell*, 209 F.2d 49, 51–52 (4to Cir. 1953); *Patrick* v. *Sharon Steel Corp.*, 549 F. Supp. 1259, 1268 (N.D. W. Virg. 1982); 9 *Wright & Miller, op. cit.*, Sec. 2388, pág. 279 y ss.; Nota, *Original Separate Trials on Issues of Damages and Liability*, 48 Va. L. Rev. 99 (1962).

■ El propósito primordial de la Regla 38.2 es aligerar la adjudicación de todo el caso. 9 *Wright & Miller, op. cit.;* Miner, *Court Congestion: A New Approach*, 45 A.B.A.J. 1265, 1268 y 1333 (1959). Por eso, cuando la separación del juicio trae como consecuencia que el procedimiento se aligere o sea más económico el tribunal debe motu proprio o a petición de parte separar las reclamaciones o controversias, según fuere el caso. Precisamente para fomentar el uso de este meca-

nismo procesal y viabilizar la consecución de estos propósitos en 1979, al adoptarse las nuevas Reglas de Procedimiento Civil, se enmendó la Regla 36.3 para ampliar su aplicación y permitirle al tribunal dictar sentencia sumaria parcial interlocutoria en relación con cualquier controversia que sea separable de las restantes. Bajo la regla anterior sólo se permitía este tipo de sentencia sumaria en casos de daños y perjuicios donde se podía separar la controversia de la negligencia de la de daños.

El tribunal al decidir sobre la procedencia de una moción para adjudicar por separado una controversia que sea parte de una reclamación debe tomar en consideración factores como los siguientes: 1) si resolver la controversia dispondría del caso o de una parte sustancial del mismo, *Muñoz* v. *Tribl. de Distrito*, supra; 2) si la prueba para resolver una controversia es independiente a la de los demás asuntos; 3) si las controversias o la prueba necesaria para adjudicar alguna de esas controversias están muy relacionadas entre sí; 4) si el procedimiento al separarse las controversias resulta más rápido o económico según la experiencia general. 9 *Wright & Miller, op. cit.,* Sec. 2388.([25]) Estos tratadistas lo sintetizan de la siguiente forma:

> Ultimately the question of separate trials should be, and is, within the discretion of the trial court. It must weigh whether one trial or separate trials will best serve the convenience of the parties and court, avoid prejudice, and minimize expense and delay. *The major consideration, of course, must be which procedure is more likely to result in a just final disposition of the litigation.* (Énfasis nuestro y escolios omitidos.) 9 *Wright & Miller, op. cit.,* pág. 283.

---

([25]) En la jurisdicción federal debido al uso de jurados en casos civiles, el tribunal también debe considerar si la separación evita algún prejuicio en la mente del juzgador. *Arnold* v. *Eastern Air Lines, Inc.,* 681 F.2d 186 (4to Cir. 1982).

■ Aplicando los factores anteriores se ha resuelto que en los casos de daños y perjuicios la adjudicación separada de la negligencia y los daños es apropiada si la prueba necesaria para ambas controversias es distinta. (²⁶) La experiencia demuestra que en un gran número de casos la adjudicación separada de la responsabilidad y los daños tiende a promover la economía procesal y facilitar las transacciones. (²⁷)

---

(²⁶)9 *Wright & Miller, op. cit.*, 1971, Sec. 2390, págs. 296–298, explican: "Separation of issues of liability from those relating to damages is an obvious use for Rule 42(b). *Logically liability must be resolved before damages are considered.* Often the evidence pertinent to the two issues is wholly unrelated. Thus it is not surprising that courts, in many kinds of litigation, have ordered this separation, though this has not been done routinely and separation has been denied where the evidence is overlapping or the liability and damages issues are intertwined." (Énfasis nuestro y escolios omitidos.)

En la jurisdicción federal el uso del jurado en reclamaciones de daños y perjuicios es un factor que milita en contra de separar las controversias. 9 *Wright & Miller, op. cit.*, pág. 298, y Sec. 2391, págs. 301–305; Nota, *Original Separate Trials on Issues of Damages and Liability*, 48 Va. L. Rev. 99, 101–106 (1962).

(²⁷) En Nota, *op. cit.*, págs. 110–111, se expresa:

"The center of the controversy over severability of the issues of liability and damages revolves around the ordinary negligence case. *The strongest argument in favor of separate trials in such cases is that court congestion would be alleviated inasmuch as considerable time would be saved. The argument for severance is convincing. Usually the issue of damages is fairly complex, even in the average negligence case. Moreover, in these cases about forty per cent of the verdicts are for the defendant. Furthermore, there is an increased possibility of settlement once the issue of liability has been determined in favor of plaintiff, for many defendants go to trial merely in the hope that they will get a favorable verdict on liability. Thus, it appears that in many negligence cases there will be a good possibility of saving time by severing the issues.* To date only a few courts have allowed severance in the ordinary case, but it seems likely that the incidence of such separations will steadily increase as the courts become more acquainted with the device of separate trials.

"There is one other instance to which the device of separate trials of liability and damages is particularly suited. *That is the situation in which damages are presently difficult to estimate, but which will be more easily computed at a later date.* Thus a plaintiff would desire an inmediate trial on the issue of liability, since the witnesses would be easier to obtain and their memories fresher. On the other hand, trial on the issue of damages could be postponed to such time *as they become fully ascertainable.* There

En casos complejos, como este, resulta apropiado que en la conferencia preliminar celebrada al amparo de la Regla 37.1 el tribunal considere y dicte una orden en la cual divida el caso en dos etapas: primero se debe dilucidar la controversia sobre responsabilidad de las partes y luego los daños. Esto propicia que se aligeren los procedimientos y se haga más económica la litigación. Generalmente la prueba sobre responsabilidad es independiente de la de daños, y el resolver esta controversia podría finalizar el caso o por lo menos simplificarlo al identificarse la parte o partes responsables y su grado de culpa. La determinación de responsabilidad también tiende a fomentar transacciones.(28)

## IV

*Conclusión*

A tenor con lo antes expuesto concluimos que el tribunal de instancia abusó de su discreción al negarse a separar las controversias de responsabilidad y daños. Debió autorizar la adjudicación separada de estas controversias y programar y reglamentar los procedimientos futuros a seguir. Entre otras cosas, debió fijar fechas para futuras conferencias para man-

---

is almost an utter dearth of cases which have allowed separate trials of liability and damages in such circumstances, but courts should be alert to this possibility." (Énfasis nuestro y escolios omitidos.)

(28) El *Manual for Complex Litigation, Second, op. cit.*, Sec. 21.41, págs. 41, 42–43, en relación con la adjudicación separada de controversias y el descubrimiento de prueba aconseja:

". . . in deciding whether to defer discovery on damages until a determination of the liability questions, the court should compare the benefits to be derived from this approach if there is a finding of no liability with the additional time and costs of damage discovery if there is a finding of liability, as well as the possible need for this evidence in negotiating or evaluating settlement of the litigation". (Escolio omitido.)

En la esfera federal una orden protectora a base de la Regla 26(c)(4) es el mecanismo apropiado para ordenar posponer el descubrimiento de prueba de otras materias y limitarlo a la prueba necesaria para adjudicar una controversia. 8 *Wright & Miller, op. cit.*, Sec. 2040, págs. 286–295.

tenerse atento al progreso y desarrollo del descubrimiento y así poder resolver cualquier problema con prontitud; establecer términos para enmendar las alegaciones; presentar demandas contra coparte y contra terceros; fijar fecha tentativa para la vista en su fondo de la controversia sobre la responsabilidad, y tomar las demás providencias que sugiere la Regla 37.1. Véase la Parte II de esta opinión. Aunque reconocemos el laudable esfuerzo del tribunal para encauzar efectivamente los procedimientos, éste debió reglamentarlos de forma más abarcadora haciendo especial hincapié en la etapa de descubrimiento de prueba.

Resolvemos que el tribunal de instancia debe adjudicar este litigio en dos fases. Primero debe resolverse la controversia sobre la responsabilidad de los demandados y terceros demandados; luego, de ser necesario, [29] los daños. El tribunal deberá auscultar la deseabilidad de emitir una orden protectora que limite el alcance del descubrimiento de prueba, permitiendo el descubrimiento en la primera fase sólo en cuanto a prueba relacionada con la controversia de responsabilidad. Al devolverse el caso el tribunal deberá modificar la orden dictada de forma cónsona con esta opinión.

*Se dictará la sentencia correspondiente.*

El Juez Presidente Señor Pons Núñez no intervino. El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no intervino.

---

[29] Esta determinación en nada prejuzga la controversia sobre la negligencia y las demás controversias que pueda presentar este caso.