ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LUIS MANUEL FERNÁNDEZ BRITO, BEATRIZ ERCILLA FERNÁNDEZ BRITO y JUAN CARLOS FERNÁNDEZ BRITO<br><br>Peticionarios<br><br>v.<br><br>MARÍA ARIZA PÁJARO Y JOSÉ R. FERNÁNDEZ BRITO<br>Recurridos | KLCE202401077 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.:<br>HU2021CV00655<br><br>Sobre:<br>Partición de Herencia |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de noviembre de 2024.

Comparece el Lcdo. José R. Santos Cruz en representación del Sr. Luis Manuel Fernández Brito, la Sra. Beatriz Ercilla Fernández Brito y el Sr. Juan Carlos Fernández Brito (en adelante los peticionarios) y solicita que revoquemos una *Orden* emitida por el 17 de julio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI).[1] En dicha determinación, el TPI descalificó al licenciado Santos Cruz como representante legal de los peticionarios y les concedió treinta a (30) días éstos para que informasen una nueva representación legal.

Insatisfechos con dicho curso de acción, el 29 de julio de 2024 los peticionarios presentaron una *Solicitud de Determinaciones Adicionales y Solicitud de Reconsideración,*

---

[1] Página 58 del apéndice del recurso.

Número Identificador

SEN2024_____

instancia que fue declarada No Ha Lugar por el foro primario mediante Resolución de 10 de septiembre de 2024.[2]

Aún inconformes, el 4 de octubre de 2024 los peticionarios presentaron el recurso de *certiorari* que nos ocupa. Por su parte, el 17 de octubre de 2024 una de las partes recurridas, Sra. María Ariza Pájaro (la recurrida), presentó su alegato en oposición. Con el beneficio de los alegatos de las partes, y por los fundamentos que se exponen a continuación, expedimos el auto y revocamos la determinación recurrida.

**I.**

El presente asunto tiene su origen en una demanda presentada por los peticionarios el 25 de junio de 2021 a los fines de liquidar la comunidad hereditaria existente sobre el caudal relicto de quien en vida fuera el Sr. Amaranto José Fernández García (el causante). Luego de varios trámites que resulta innecesario pormenorizar aquí, el 23 de agosto de 2021 la señora Ariza Pájaro presentó una *Moción Solicitando Inhibición al Lcdo. Jose Rafael Santo Cruz* (sic).[3] Como fundamento para dicha solicitud, se alegó que el licenciado Santos Cruz representó y advino en conocimiento como notario de varios testamentos otorgados y luego revocados por el causante mediante testamento abierto otorgado ante el Lcdo. Alfredo Torres Hernández mediante la Escritura número 80 de 3 de mayo de 2001. De igual forma, se esgrimió como fundamento que el 6 de diciembre del año 2000 el licenciado Santos Cruz otorgó la Escritura número 57 sobre donación y aceptación, relacionada a un edificio localizado en la calle Dr. Antonio López #11 en Humacao, la cual según la demandada es nula o anulable. Sobre este aspecto, se afirmó que lo anterior "será objeto de discusión y se harán alegaciones en la

---

[2] *Íd.*, págs. 59-65 y 77-82, respectivamente.
[3] *Íd.*, págs. 20-21.

demanda de epígrafe que pudieran llegar hasta el Tribunal Supremo cuestionando la responsabilidad ética del compañero en su día".

Así las cosas, el 17 de septiembre de 2021, notificada el 20 de septiembre de 2021, el TPI, declaró No Ha Lugar la inhibición (sic) por prematura. Sin embargo, en dicha determinación el foro primario consignó: "Si más adelante en el descubrimiento de prueba se configuran elementos de conflictos de intereses y/o confusión de abogado y testigo, se volverá a evaluar la petición."[4]

Luego de lo que la parte recurrida denominó como un descubrimiento de prueba extenso, durante la celebración de la Conferencia con Antelación al Juicio, llevada a cabo mediante el mecanismo de videoconferencia el 12 de marzo de 2024, la representante legal de dicha parte planteó nuevamente el asunto de la descalificación del licenciado Santos Cruz. Luego de escuchar argumentos de ambas partes, el TPI concedió 10 días a cada parte para exponer su posición por escrito.[5]

En su comparecencia en cumplimiento con lo ordenado, la recurrida argumentó que el licenciado Santos Cruz no sólo suscribió como notario varios documentos legales del causante, sino que estos inciden en las controversias pendientes ante el foro primario. En particular, señaló que el licenciado Santos Cruz fungió como notario en las siguientes escrituras:

1. Escritura de Donación, Número 57, otorgada el **6 de diciembre de 2000**, en la que compareció el causante y el co-demandante Juan C. Fernández Brito, sobre propiedad ubicada en la calle Antonio López en Humacao, Puerro Rico.
2. Escritura de Compraventa, Número 40, otorgada el **4 de agosto de 2000**, entre el causante y Beatriz Hercilia Fernández Brito, a quien compró la participación de esta sobre un condominio ubicado en la calle Antonio López en Humacao, Puerto Rico.
3. Escritura de Cesión, Número 36, otorgada el **18 de julio de 2000**, entre el causante y los co-demandantes Luis Manuel Fernández Brito y Juan Carlos Fernández Brito

---

[4] *Íd.*, pág. 22.
[5] Véase *Moción en Solicitud de Descalificación del Lcdo. José R. Santos Cruz., Íd.*, págs. 44-49.

4. respecto a propiedad ubicada en la Urb. Villa Franca, en Palmas del Mar, Humacao, Puerto Rico.

4. Escritura de Cancelación de Pagaré, Número 47, otorgada el **26 de octubre de 2009** por el causante sobre la propiedad ubicada en la Urb. Villa Franca en Palmas del Mar, Humacao, Puerto Rico.

Además, se señaló que el licenciado Santos Cruz fue quien notarizó el Primer Contrato de Arrendamiento con Opción a Compra otorgado el 30 de noviembre de 2000 entre el causante y el co-demandante Luis Manuel Fernández Brito sobre la propiedad en disputa ubicada en la calle Antonio López en Humacao, Puerto Rico. De igual forma, que otorgó dos enmiendas a un testamento del causante: Escritura Núm. 16 otorgada el **13 de mayo de 1996** y Escritura Núm. 68 de **3 de noviembre de 1999**.

Establecido lo anterior, la recurrida invocó las disposiciones de los Cánones 21 y 22 de Ética Profesional, *infra*, las Reglas 4 y 5 del Reglamento Notarial, *infra*, y lo dispuesto por el Tribunal Supremo en *In re Matos Bonet*, 153 DPR 296 (2001), en apoyo de su solicitud de descalificación del licenciado Santos Cruz.

En su *Oposición a Solicitud de Descalificación* presentada el 2 de abril de 2024, los demandantes -aquí peticionarios- sostuvieron que la solicitud era un intento más de dilatar los procedimientos en un caso que ya está listo para la celebración del juicio en sus méritos. También adujeron que la petición estaba basada en especulación y engaño.[6] En primer término, argumentaron que eran inaplicables las disposiciones del Canon 21 de Ética Profesional ya que el abogado de los demandantes nunca fue abogado del causante y por tanto nunca se configuró una relación abogado cliente que configurase el alegado conflicto que el Canon 21 pretende evitar.

De igual forma, en la referida comparecencia se sostuvo que resultaba engañoso y altamente especulativo afirmar que el licenciado Santos Cruz conoce los secretos del causante y

---

[6] Véase O*posición a Solicitud de Descalificación, Íd., Págs. 50-57.*

expresamente se rechazó que hubiera existido una relación de amistad entre ambos. De igual manera, se enfatizó que los servicios prestados por el licenciado Santos Cruz al señor Fernández García fueron de exclusivamente de índole notarial.[7] En esta dirección, los peticionarios hicieron referencia a lo dispuesto en la Regla 5 del Reglamento Notarial de Puerto Rico, *infra,* que establece que en ocasiones la práctica de la profesión de abogado puede ser incompatible con la práctica notarial, y descartaron la aplicación de dicha normativa en el caso que nos ocupa.

Así las cosas, el 17 de julio de 2024, el TPI emitió la Orden mediante la cual descalificó al licenciado Santos Cruz. Por su relevancia, transcribimos en su totalidad la determinación del Tribunal:

> Examinados los escritos, el expediente del caso y escuchadas las partes durante la vista celebrada el 6 de junio de 2024, la solicitud de descalificación del Lic. José R. Santos Cruz se declara CON LUGAR. Parte demandante en un término de treinta días anuncie nueva representación legal.[8]

El 29 de julio de 2024 los peticionarios presentaron una *Solicitud de Determinaciones Adicionales y Solicitud de Reconsideración* en la que se alegó que la antedicha determinación era contraria al derecho aplicable cuando se tiene ante sí una solicitud de descalificación de un representante legal.[9] También, se argumentó que la parte recurrida no logró demostrar el alegado conflicto y tal gravedad que justificaría la descalificación decretada. Se expuso que la demanda fue presentada hace 3 años para lograr la liquidación de la comunidad hereditaria existente entre las partes y que el último testamento otorgado por el causante no fue redactado ni autorizado por el licenciado Santos Cruz. En cuanto a la escritura de donación que es controvertida por los

---

[7] *Íd.,* pág. 50.
[8] Véase nota al calce núm. 1.
[9] Apéndice del recurso, págs. 59-65.

demandados expresó que la misma fue otorgada hace mas de 23 años y nunca fue impugnada dentro del término prescriptivo dispuesto para ello. De igual manera se destacó el estado procesal del caso, el cual adujeron que ya está listo para la celebración del juicio en su fondo luego de las gestiones realizadas por el representante legal de los peticionarios.[10] Asimismo, se planteó que el retraso en los procedimientos beneficia exclusivamente a la recurrida, pues esta continúa disfrutando y ocupando de manera exclusiva una vivienda que es parte de los bienes a dividir.

Con el beneficio de la posición de ambas partes, el 10 de septiembre de 2024 el TPI emitió una Resolución en la que declaró No Ha Lugar la solicitud de reconsideración presentada por los peticionarios y concluyó:

> En el caso de autos, no existe controversia en torno a que la propiedad ubicada en la Calle Antonio López 11, en Humacao, es uno de los bienes del caudal relicto sujeto a partición en el presente caso. De la propia *Demanda* surge que el causante dispuso en vida del edificio que ubica en la Calle Antonio López, vendiéndole el primer piso de dicha estructura a su hijo y codemandante Luis Manuel Fernández Brito, y donando el segundo piso a favor de su hijo y codemandante Juan Carlos Fernández Brito. Entrada 1, pág. 4. En su *Contestación a Demanda*, la parte demandada cuestionó la validez de la referida donación. Entrada 8. Alegó, además, que dicha donación debía colacionarse.

> Del expediente del caso surge que el Lcdo. Santos Cruz fungió como notario de la Escritura de Donación número 57, otorgada el 6 de diciembre de 2000, en la que comparecieron el causante, Amaranto Fernández García, y el codemandante, Juan Carlos Fernández Brito, y mediante la cual el causante le donó a su hijo el segundo nivel de la propiedad ubicada en la calle Antonio López 11, en Humacao, Puerto Rico. Entrada 198. A su vez, el 30 de noviembre de 2000, el causante y el codemandante, Dr. Luis Manuel Fernández Brito, otorgaron un Contrato de Arrendamiento con Opción a Compra sobre el
> primer piso de la referida propiedad, suscrito ante el Lcdo. Santos Cruz. *Id.*

> A pesar de lo anterior, en los párrafos 7, 9 y 10 de su *Réplica a Contestación a Demanda*, la parte demandante negó que se otorgaran escrituras algunas sobre compraventa o donación a favor de los codemandantes Luis Manuel Fernández Brito y Juan Carlos Fernández Brito. Reconoció, no obstante, que

---

[10] Para un detalle de estas gestiones según consignadas por los peticionarios véase página 63 del Apéndice del recurso.

en "cuanto a la colación de dicha donación y en caso de que verdaderamente se haya otorgado una escritura de donación a favor de Juan Carlos Fernández Brito, es necesario examinar el documento en cuestión para verificar si el donante eximió al donatario de colación en su día." Es decir, es evidente que, a pesar de negar su existencia, ambos documentos existían y obran en autos. A su vez, la parte demandante reconoció que, de existir tal escritura de donación, era necesario revisar su contenido para determinar si estaba sujeta a colación. De todo lo anterior se desprende

claramente que existe una escritura de donación, en la cual el Lcdo. Santos Cruz fungió como notario, la cual fue suscrita por el causante y uno de los clientes del Lcdo. Santos Cruz en el caso de autos, y versa sobre uno de los bienes del caudal hereditario objeto de este pleito. Por lo tanto, es objeto de controversia en este caso.

De otra parte, resulta preciso destacar que, en su *Réplica a Contestación a Demanda*, la parte demandante sostiene que "la constancia de la existencia de los bienes alegados y de las transacciones de donación y compraventa que realizó el causante en vida, surge del conocimiento personal de los demandantes." Sin embargo, de la propia escritura de Donación y Aceptación, así como del Contrato de Arrendamiento con Opción a Compra surge que el Lcdo. Santos Cruz fungió como notario en ambos documentos, dando fe de conocer personalmente al causante, Amaranto José Fernández Garcia, al Dr. Luis Manuel Fernández Brito y a Juan Carlos Fernández Brito.

> El Artículo 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, dispone que El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

Cuando un notario da testimonio de la legitimación de las firmas, debe hacer constar su conocimiento personal del firmante, o en su defecto, la utilización de los medios supletorios que provee el Articulo 17 de la Ley Notarial de Puerto Rico para identificar a los otorgantes. Tomando en cuenta lo antes expuesto, resulta evidente que el Lcdo. Santos Cruz no advino en conocimiento sobre los bienes que constituyen el caudal y las transacciones habidas entre el causante y sus hijos exclusivamente a través del conocimiento personal de los demandantes en este caso. Es decir, previo a la presentación del pleito, conocía sobre los bienes que fueron propiedad del causante, ciertas transacciones efectuadas en cuanto a dichos bienes entre el causante y algunos de sus herederos a quienes actualmente representa, y que ahora son objeto de este pleito.

Considerado todo lo anterior, este Tribunal no alberga duda de que en adición a que existe una posibilidad real de que el Lcdo. Santos Cruz pueda fungir como testigo en torno a la validez de la Escritura de Donación y si esta es colacionable, la mera apariencia de impropiedad también amerita su descalificación.

En el caso de autos, la parte demandada tiene legitimación activa para solicitar la descalificación del Lcdo. Santos Cruz ya que son parte de la sucesión del causante y se verían afectados por la potencial incompatibilidad entre sus funciones como notario y como abogado de la parte demandante. De otro lado, si bien esta solicitud de descalificación se materializa en un estado avanzado de los procedimientos, cabe destacar que la parte promovente formuló el argumento a inicios del pleito y su solicitud fue denegada por prematura, haciéndose constar que podría reiterar su solicitud tras concluido el descubrimiento de prueba.

De particular relevancia, durante la vista celebrada el 12 de marzo de 2024, en atención al planteamiento formulado nuevamente por la parte demandada en torno a la descalificación, el Tribunal expresó que existía una posibilidad de que el Lcdo. Santos Cruz se convirtiera en testigo en el caso. Por razón de ello, se le concedió a la parte demandada un término para presentar una solicitud de descalificación, así como un término para que el Lcdo. Santos Cruz replicara. Entrada 197. Es decir, la presentación de la solicitud de descalificación en esta etapa de los procedimientos fue avalada por el Tribunal en corte abierta y obedeció a que su primera solicitud de descalificación fue denegada por prematura.

Adviértase que, en este caso, debido a su naturaleza y las contenciones entre las partes, el descubrimiento de prueba ha sido extenso. A su vez, según bien señala la parte demandada, hace escasos cinco meses esta anunció nueva representación legal. Considerado todo lo anterior, resulta claro que la solicitud de descalificación no tiene el propósito de dilatar los procedimientos u ocasionar un perjuicio indebido a la parte demandante.

Evaluados los factores aplicables en los casos de descalificación, así como su propósito, dentro de la discreción conferida a este Tribunal, se declara NO HA LUGAR a la Solicitud de Reconsideración. No albergamos duda de que la descalificación del Lcdo. Santos Cruz evitará la apariencia de conducta impropia y la posibilidad de que este incurra en posibles conflictos éticos.

Se concede a la parte demandante un término de treinta días para anunciar nueva representación legal.[11]

Inconformes, los peticionarios imputaron al TPI la comisión del siguiente error:

---

[11] Citas omitidas. Véase págs. 80-82 del Apéndice del recurso.

Erró el Honorable Tribunal de Primera Instancia al determinar que procede la descalificación del Lcdo. José Rafael Santos Cruz por la potencial incompatibilidad entre sus funciones como notario y abogado de la parte demandante. Los demandantes fueron despojados de su representación legal sin que su hubiese configurado el conflicto entre la función dual del notario como abogado, según lo prescribe la ley.

Tal y como se expresara previamente, el 17 de octubre de 2024 la recurrida presentó su *Alegato* en el que se opuso a la expedición del auto de *certiorari*. En primer término, alegó que procedía la desestimación del recurso por considerar que la parte peticionaria incumplió con lo dispuesto en la Regla 14 (B) del Reglamento de este Tribunal, 4 LPRA Ap. XXII-B R. 14.[12]  En cuanto a los méritos, argumentó que, considerados los criterios contenidos en la Regla 40 del Reglamento de este Tribunal, *infra*, procedería la denegación del recurso.  En apoyo a su posición, discutió las disposiciones de los Cánones 21 y 22 de Ética Profesional, disposiciones del Reglamento Notarial, *infra*, así como lo resuelto por el Tribunal Supremo de Puerto Rico en *In Re Matos Bonet, supra.*

Puntualizó que desde su punto de vista, la razón para la descalificación está fundamentada en el licenciado Santos Cruz otorgó la Escritura de Donación Número 57, otorgada el 6 de

---

[12] La referida Regla establece que deberá notificarse la cubierta o primera página de un escrito de **apelación** a la Secretaría del Tribunal de Primera Instancia dentro de las setenta y dos horas siguientes a la presentación del referido escrito.  Cabe precisar que, tratándose el presente asunto de un recurso de *certiorari,* la Regla aplicable es la Regla 33 del Reglamento de este Tribunal, la cual contiene una disposición análoga.  Notamos que según surge de la entrada 222 del expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), el 21 de octubre de 2024 la representación legal de los peticionarios presentó la ante el foro primario la portada del recurso.  Previamente, el 8 de octubre de 2024 la Secretaría de este Tribunal notificó a la Secretaría del TPI de la presentación del recurso que nos ocupa.  Véase entrada 220 del expediente del caso en SUMAC.  Cumplido en este caso específico con el propósito de la presentación de la notificación y recordando lo dispuesto por nuestro más alto foro a los efectos de que el deber principal que tenemos los tribunales es impartir justicia y no dejarnos llevar por tecnicismos. *León García v. Restaurante El Tropical*, 154 DPR 249 (2001), rechazamos la desestimación solicitada.  Véase, además, *Sucn. Bravo v. Srio. de* Hacienda, 106 D.P.R. 672 (1998), a los efectos de que "[c]uando de hacer justicia se trata, no puede haber moldes técnicos que aprisionen los remedios justos", asimismo el inciso (3) de la Regla 2 del Reglamento de este Tribunal que establece, entre otros propósitos, que dicho cuerpo normativo está dirigido a "[i]mplantar el principio rector de que las controversias judiciales se atiendan en los méritos y no se desestimen los recursos por defectos de forma o notificación que <u>no afecten los derechos de las partes</u>." (Subrayado nuestro)

diciembre de 2000 en la que comparecieron el causante y el Sr. Juan C. Fernández Brito sobre la propiedad ubicada en la calle Antonio López en Humacao, de la que existe controversia en cuanto a su eficacia y validez. Igualmente, sostuvo que el licenciado Santos Cruz fue quien notarizó el primer *Contrato de Arrendamiento con Opción a Compraventa* el 30 de noviembre de 2000, otorgado el 30 de noviembre de 2000 entre el causante y el Sr. Luis Manuel Fernández Brito, arguyendo que podría convertirse en un testigo para aclarar la intención y los negocios suscritos entre el causante.[13]

## II.

## -A-

El auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *IG Builders v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Colón Mendoza*, 149 DPR 630 1999. Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse ordinariamente de asuntos interlocutorios.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por vía de excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios evidenciarios; (c) anotaciones de rebeldía; (d) casos de relaciones de

---

[13] Véase pág. 18 del recurso de *certiorari*.

familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En *Job Connection Center v. Econo*, 185 DPR 582 (2012), el Tribunal Supremo se enfrentó a la controversia de si las órdenes de descalificación de abogados decretadas por el Tribunal de Primera Instancia están contenidas entre las excepciones que confieren jurisdicción a este Tribunal para revisar órdenes o resoluciones interlocutorias bajo la antes referida Regla 52.1 de Procedimiento Civil. Tras enunciar la naturaleza, propósitos y procedencia de las determinaciones acerca de descalificaciones de abogados, el Tribunal Supremo concluyó que dichas determinaciones son revisables de forma interlocutoria mediante recurso de *certiorari.*

Luego de establecer nuestra facultad revisora sobre un caso al concluir que el asunto planteado trata de alguna de las materias contempladas en la Regla 52.1, *supra,* o versa sobre alguna de las instancias reconocidas jurisprudencialmente, procede evaluar si a la luz de los criterios enumerados en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención. La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición del auto de *certiorari* o de una orden de mostrar causa:
>
> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De ordinario, se respetan las medidas procesales que los jueces toman en el ejercicio prudente de su discreción para dirigir y conducir los procedimientos que ante ellos se siguen. Ello, pues los jueces del Tribunal de Primera Instancia gozan de amplia discreción para gobernar esos procedimientos. *Lluch v. España Service Sta.*, 117 DPR 729 (1986); *Fine Art Wallpaper v. Wolf*, 102 DPR 451 (1974). Gozan, además, de amplia facultad para disponer de los procedimientos ante su consideración de forma que se pueda asegurar la más eficiente administración de la justicia, y están llamados a intervenir activamente para manejar los procesos y dirigirlos de forma tal que se logre una solución justa, rápida y económica de los casos. *Vives Vázquez v. E.L.A.*, 142 DPR 117 (1996); *Vellón v. Squibb Mfg., Inc.*, 117 DPR 838 (1986).

En armonía con tal normativa, la función de un tribunal apelativo en la revisión de controversias, como la que nos ocupa, requiere que se determine si la actuación del TPI constituyó un abuso de la discreción en la conducción de los procedimientos ante sí. Al realizar tan delicada función, un tribunal apelativo no debe intervenir con el ejercicio de esa discreción, salvo que se demuestre que hubo un craso abuso de esta, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial. *Zorniak v. Cessna,* 132 DPR 170 (1992); *Lluch v. España Service Sta., supra.*

**-B-**

Los tribunales están facultados para descalificar a abogados que participan en un caso para prevenir una violación a cualquiera de los Cánones de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito. *Meléndez v. Caribbean Int'l. News*, 151 D.P.R. 649 (2000). Sobre la descalificación como mecanismo para asegurar la adecuada marcha de un litigio, el Tribunal Supremo ha expresado que, basándose en el deber de mantener el orden y el control de los procedimientos que se ventilan ante ellos, los tribunales inferiores tienen la facultad de descalificar abogados si ello resulta necesario para el logro del objetivo primordial de todo tribunal: la solución justa, rápida y económica de los pleitos.

En lo que respecta a la determinación de derecho que hace el tribunal de instancia al descalificar, se trata de una decisión impregnada del alto grado de discreción que tiene dicho foro en el manejo procesal de un caso. En palabras del Tribunal Supremo:

> Como es sabido, los tribunales apelativos no debemos, con relación a determinaciones interlocutorias discrecionales procesales, sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción. *Meléndez v. Caribbean Int'l. News*, *supra*.

El Canon 21 del Código de Ética Profesional[14], expresamente dispone que el abogado tiene para con su cliente un deber de lealtad completa. La obligación de representar al cliente a tono con dicha lealtad incluye, entre otras cosas, ejercer un criterio profesional independiente y desligado de sus propios intereses y no divulgar los secretos y confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes. *Liquilux Gas Corporation v. Berríos*, 138 DPR 850 (1995); *Ex Parte Robles Sanabria*, 133 DPR 739 (1993). El Canon 21 le impone a todo abogado el deber de evitar tres situaciones básicas,

---

[14] 4 LPRA Ap. IX C. 21.

a saber: 1) aceptar la representación legal cuando a su juicio la misma pueda verse afectada por sus expectativas o intereses personales; 2) aceptar la representación legal simultánea de dos clientes distintos con intereses contrapuestos; y 3) aceptar la representación de un cliente en asuntos que puedan afectar cualquier interés de un cliente anterior. *In re Toro Cubergé*, 140 DPR 523 (1996).

En *In re Toro Cubergé, supra,* el Tribunal Supremo expresó que el primer aspecto de dicha prohibición intenta evitar que un abogado deje de realizar determinada acción de posible beneficio para su cliente porque la misma frustraría algún interés propio que el abogado también quiera promover o defender.  Por su parte en cuanto al segundo y tercer aspecto de la prohibición éstos tienen el firme propósito de garantizarle a todo cliente que las confidencias y secretos que compartió con su abogado no serán utilizados en su contra, en beneficio de una representación antagónica, de un cliente simultáneo o posterior. *In re Carlos Roberto Soto*, 134 DPR 772 (1993); *Ex Parte Robles Sanabria, supra.* Así pues, un abogado queda impedido de asumir la representación simultánea o sucesiva de dos clientes, independientemente de la aprobación otorgada por éstos, cuando entre ambas representaciones exista una *relación sustancial* que implique intereses adversos. *Puerto Rico Fuels v. Empire Gas Co.*, 133 DPR 112 (1993).

Bajo el criterio de la relación sustancial, el cliente sólo tiene que demostrar que la controversia legal envuelta en el pleito en el que el abogado comparece en su contra está relacionada sustancialmente con la materia o causa de acción en la que tal abogado lo representa o le representó. El cliente no tiene que probar que ocurrió una violación al principio de confidencialidad, siendo suficiente con que demuestre la existencia de una relación

previa abogado y cliente, *la relación sustancial* vigente entre ambas representaciones conflictivas y el efecto adverso que surge de la representación dual de las mismas. *Puerto Rico Fuel v. Empire Gas Co.*, *supra*; *In re Carreras Rovira Y Suárez Zavas*, 115 D.P.R. 778 (1984).

Abundando sobre el criterio de la relación sustancial entre asuntos necesaria para descalificar a un abogado, en su obra *Ética del Abogado y Responsabilidad Disciplinaria*,[15] el profesor Sigfrido Steidel Figueroa nos dice:

> Determinar si existe una relación sustancial entre dos representaciones supone comparar los hechos alegados, las defensas planteadas, las controversias jurídicas involucradas y la naturaleza de las representaciones. No es necesario que exista identidad de causas, hechos o controversias entre dos representaciones, pues información obtenida previamente puede servir no solo para adelantar los intereses de un cliente actual frente a los intereses de un cliente anterior, sino también para refutar defensas o para impugnar a un cliente anterior.
>
> [...]
>
> Por otro lado, en el contexto de una solicitud de descalificación por presunta representación sucesiva adversa entre una representación pasada que no involucró un pleito judicial-por tratarse de una consulta legal u otra gestión análoga- y una representación actual-que lógicamente involucra un proceso litigioso en los tribunales, pues de lo contrario, no se plantearía una solicitud de descalificación-supone evaluar el alcance de la gestión profesional realizada por el abogado cuya descalificación se solicita para inferir el tipo de información necesaria para lograr el cabal cumplimiento de dicha gestión y, por lo tanto, el tipo de información que probablemente fue provista al abogado en esa ocasión, y su relevancia en la evaluación de las alegaciones y defensas involucradas en una relación profesional presente. En consecuencia, existe una relación sustancial si surge una coincidencia fáctica entre la información que probablemente divulgó o debió divulgar el cliente anterior y los hechos relevantes o que sería necesario probar para resolver los méritos de las alegaciones o defensas planteadas en la representación actual.[16]

De otra parte, el Tribunal Supremo también ha reconocido que el Canon 21 no impide la representación sucesiva o simultánea de dos clientes por su abogado en casos donde exista total ausencia de un posible conflicto de intereses entre ambas representaciones. *Liquilux Gas Corporation v. Berríos, supra.*

---

[15] Steidel Figueroa, S., *Ética del Abogado y Responsabilidad Disciplinaria*, San Juan, 2016.
[16] Id, a la página 331.

La normativa vigente dispone que el tribunal *motu proprio* puede ordenar la descalificación de un abogado en aquellos casos donde éste asume la representación de ambos clientes a pesar de la existencia de un posible conflicto. En tales casos no resulta necesario que se aporte prueba sobre una violación ética, ya que la mera apariencia de impropiedad podrá ser utilizada, en caso de duda, en favor de la descalificación. *Otaño v. Vélez*, 141 DPR 820 (1996).

Sobre este último aspecto, se ha señalado que no se puede perder de perspectiva que la prohibición del Canon 21 del Código de Ética Profesional, *supra*, se extiende, no solo a la existencia patente del conflicto, sino a conflictos aparentes pero que llevan consigo la semilla de un posible o potencial conflicto. En otras palabras, el abogado se encuentra vedado de asumir la representación legal de clientes cuando se puede anticipar razonablemente un conflicto de intereses futuro, aun cuando sea inexistente al momento de la aceptación de la representación legal. *In re Ortiz Martínez*, 161 DPR 572 (2004).

En casos como el que nos ocupa, donde la parte contraria es quien solicita la descalificación, el tribunal debe considerar si quien solicita la descalificación tiene legitimación activa para invocarla, la gravedad del conflicto de interés envuelto, la complejidad del derecho o los hechos pertinentes a la controversia y el "*expertise*" de los abogados envueltos, la etapa de los procedimientos en que surja la controversia sobre la descalificación y su posible efecto en cuanto a la resolución justa, rápida y económica del caso. También, debe considerar el propósito detrás de la descalificación, es decir, si la moción de descalificación está siendo utilizada como mecanismo procesal para dilatar los procedimientos. *Liquilux Gas Corporation v. Berríos*, *supra*. Al considerar esta serie de factores, el tribunal deberá

sopesar, además, el derecho que le asiste a todo ciudadano de escoger libremente el abogado que lo represente. *Sánchez Acevedo v. ELA*, 125 D.P.R. 432, 438 (1990).

Por su parte, el Canon 38 de Ética Profesional dispone la preservación del honor y la dignidad de la profesión, al establecer que los abogados deben esforzarse al máximo en la exaltación del honor y dignidad de la misma, aunque ello conlleve sacrificios personales y deben también evitar hasta la apariencia de conducta profesional impropia. En virtud de tal disposición, el profesional del derecho tiene el deber de lucir libre de influencias extrañas a su gestión profesional y, en el descargo de sus responsabilidades, debe cuidarse de que sus actuaciones no den margen a la más leve sospecha de que promueve intereses conflictivos. En este sentido, la jurisprudencia reiteradamente ha establecido que la apariencia de impropiedad será utilizada para resolver cualquier duda que surja sobre la posible representación legal de un abogado en un caso, en favor de la descalificación.[17]

**-C-**

*El notario puertorriqueño no es abogado de ninguno de los otorgantes, no representa a cliente alguno, representa a la fe pública, representa la ley para todas las partes.*[18]

El notario es el profesional del derecho que ejerce una función pública que consiste en recibir, interpretar y dar forma legal a la voluntad de las partes, dar fe de hechos, redactar los instrumentos adecuados a ese fin, conferirles autenticidad, conservar los originales de éstos y expedir copias que den fe de su contenido, y cumplir con cualquier otra función delegada por ley. Véase, Artículo 2 de la Ley Notarial de Puerto Rico, *supra*, así como la Regla 2 del Reglamento Notarial de Puerto Rico, 4 Ap. XXIV R. 2.

---

[17] *Otaño v. Vélez, supra; Liquilux Gas Corp. v. Berríos, Zaragoza, supra.*
[18] Exposición de Motivos, Ley Notarial de Puerto Rico, Ley 75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2001 y siguientes.

Respecto al ejercicio de funciones notariales, se ha resuelto que los notarios no pueden entrar en conflicto de intereses con las personas que acuden ante ellos a otorgar un instrumento público, pues el notario no tiene propiamente clientes, ya que representa la fe pública notarial.   Steidel Figueroa, S., *Ética del Abogado y Responsabilidad Disciplinaria, supra*, pág. 172

Atañe a la discusión la Regla 5 del Reglamento Notarial, *supra.* Esta dispone:

> La práctica de la profesión de la abogacía puede ser en algunas ocasiones incompatible con la práctica de la notaría.
>
> El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.
>
> El notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar de éste.
>
> El abogado que compareció en representación de la parte demandante, del adjudicatario o comprador en un proceso legal relativo al de pública subasta o como oficial autorizado de estos últimos en este proceso no podrá autorizar la escritura de venta judicial en su capacidad de notario.
>
> Las normas recogidas en los párrafos precedentes aplicarán al notario personalmente y no a aquellos notarios y abogados que sean o hayan sido sus socios o compañeros de oficina. No obstante, las personas socias o compañeras de oficina del notario autorizante no podrán representar a una parte otorgante en un documento público autorizado por éste, cuando en un litigio se impugne la validez de cualquiera de los acuerdos que surgen del documento o se alegue que se omitieron acuerdos relativos al asunto objeto de éste, o cuando por alguna otra razón se cuestione la actuación del notario autorizante.

Conforme a los comentarios a la Regla incluidos en la Resolución del Tribunal Supremo de 25 de marzo de 2021, *In re Enmiendas al Reglamento Notarial,* ER-2021-01, 206 DPR 752 (2021), el propósito de esta regla es exponer la norma general de incompatibilidad entre las funciones de la abogacía y de la notaría cuando ambas intervenciones se dan sobre el mismo asunto. En la

misma, se ofrecen ejemplos específicos de circunstancias en las que la intervención dual queda prohibida y de otras en que, por excepción,

se permite esa intervención dual.

En *In re Matos Bonet*, 153 DPR 296 (2001), el Tribunal Supremo, al evaluar la conduta del abogado notario Matos Bonet -- otorgar como notario unas escrituras de compraventa de unas propiedades que son objeto de una acción judicial **previa** sobre cumplimiento específico de contrato- estableció una prohibición absoluta que impide a los notarios autorizar documentos que involucren bienes inmuebles objeto de un litigio en el que el abogado intervenga como abogado de parte. Steidel Figueroa, S. *Íd.*, pág. 178.

**-D-**

El propósito medular de todo término prescriptivo es garantizar la estabilidad económica y social de las relaciones bilaterales, al estimular el rápido reclamo del cumplimiento de las obligaciones contractuales o legales y procurar así la tranquilidad del obligado contra la eterna pendencia de una acción civil en su contra. *Cintrón v. ELA*, 127 DPR 582 (1990).

En lo pertinente al presente caso, el Artículo 1253 del derogado Código Civil de 1930, 31 LPRA 3512, vigente a la fecha del otorgamiento de la escritura de donación del inmueble en Humacao, y por lo tanto la disposición aplicable a la presente controversia, establece que la acción de nulidad de contrato, cuando se alegare que hubo error o dolo, sólo se podrá ejercitar dentro de los cuatro (4) años desde que el contrato haya sido consumado.

**III.**

Comenzamos estableciendo que en este caso no nos encontramos ante un caso de representación sucesiva adversa a

un cliente, ni un caso en el que exista un conflicto de intereses entre los intereses de dos clientes del licenciado Santos Cruz. Ello pues tal y como se expusiera en la Parte II (C) de esta Sentencia los notarios no pueden entrar en conflicto de intereses con las personas que acuden ante ellos a otorgar un instrumento público, pues el notario no tiene propiamente clientes. Conforme a este principio, y para efectos de la controversia que nos ocupa, el causante no fue cliente del licenciado Santos Cruz. Lo anterior descarta que nos encontremos ante un asunto en el que sean de aplicación las disposiciones del Canon 21 de Ética Profesional. Examinada la disposición reglamentaria aplicable, la antes citada Regla 5 del Reglamento Notarial, procede también descartar que la misma impida al licenciado Santos Cruz continuar en el caso, pues bien examinado el asunto ante nos, no hay visos de incompatibilidad entre las funciones de la abogacía y de la notaría pues realmente no nos encontramos ante una actuación de dicho representante legal actuando también como notario *en un mismo asunto.*

Dicho lo anterior, y conforme surge del expediente y del derecho aplicable, somos del criterio que erró el TPI al descalificar a la representación legal de los demandantes aquí peticionarios. En primer lugar, las situaciones y argumentos presentados para justificar la solicitud de descalificación descansan sobre elementos no sustentados en el récord e improcedentes en Derecho.

Es decir, el TPI decretó la descalificación objeto del recurso de referencia sobre la base de supuestos y conclusiones improcedentes, pues no hay aquí amenaza a la integridad del proceso judicial que justifique la extrema medida de descalificación, la cual solo procede de ser estrictamente necesaria. No debemos permitir que las alegaciones espurias de una parte, en conjunto con la mentada "apariencia" y la tradicional deferencia al

manejo del caso por el TPI, prive a unas partes de la representación legal que escogieron, particularmente cuando ya el caso está listo para juicio y han transcurrido más de dos años de presentada la acción de partición de herencia de epígrafe.

Cuando es una parte quien solicita la descalificación de una abogada, el TPI debe "hacer un análisis de la totalidad de las circunstancias", considerando los siguientes factores: "(i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos." *Job Connection Center v. Econo, supra*; *Liquilux Gas Corp v. Berríos, Zaragoza, supra.*

Aunque no constituye un procedimiento disciplinario, una descalificación afecta los derechos de las partes y el trámite del procedimiento. En consideración a ello, la descalificación es un remedio que no se debe imponer ligeramente. Sólo procede cuando sea estrictamente necesario. Si existen medidas menos onerosas que aseguren la integridad del proceso judicial y el trato justo a las partes, la descalificación debe ser denegada. El Tribunal debe realizar un balance entre el efecto adverso de la representación y el derecho a un juicio justo e imparcial. *Íd.*

El hecho de que la recurrida sostenga que el licenciado Santos Cruz pudiese convertirse en testigo sobre la intención y negocios suscritos entre el causante y alguno de sus hijos en instrumentos otorgados en el año 2000 no justifica la descalificación solicitada. Adviértase que el texto mismo de las

escrituras obra en el expediente y refleja claramente la naturaleza de la intención de las partes. De otra parte, es preciso destacar que el caso de autos no puede utilizarse pretender impugnar la donación del inmueble ubicado en la Calle Antonio López de Humacao. Ello, pues conforme a lo dispuesto en el Artículo 1253 del derogado Código Civil de 1930, *supra*, la acción de nulidad de dicho contrato ya prescribió, pues debió ejercitarse dentro los cuatro (4) años desde que el contrato fue consumado. No siendo la referida propiedad parte del caudal desde el año 2000, únicamente podría ser considerada para efectos de la colación al momento de adjudicarse la participación de cada uno de los herederos del causante.

Asimismo, resulta necesario consignar que los hechos de este caso son plenamente distinguibles de aquellos discutidos en el caso de *In re Matos Bonet, supra*. Ello, pues contrario a lo que ocurrió en el citado asunto, aquí no nos encontramos en una situación donde un notario otorgó documentos públicos relativos a propiedades que eran objeto de un litigio previo en el cual dicho notario se desempeñaba como abogado.

La etapa en que se encuentra el pleito, a más de dos años de presentado y ya listo para la celebración del juicio abona a nuestra conclusión de que no procedía decretar la descalificación del representante legal de los peticionarios.

En fin, concluimos que erró el TPI al descalificar al licenciado Santos Cruz. No nos encontramos ante conducta que constituya un obstáculo para la sana administración de la justicia. No se ha demostrado que la representación impugnada pudiese afectar la integridad del trámite judicial pendiente ni la capacidad de los abogados de cada una de las partes de defender adecuadamente los intereses de sus respectivos clientes. A la luz de que un abogado debe ser descalificado únicamente cuando ello

es estrictamente necesario, erró el TPI al conceder la descalificación solicitada

**IV.**

Por los fundamentos expuestos, se expide el auto de *certiorari* y se revoca la determinación recurrida.  En consecuencia, se deja sin efecto la descalificación del licenciado Santos Cruz.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones